IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 6 2004

Michael N. Milby
Clerk of Court

JUANA GARCIA RIOS                          )
Petitioner,                                )
                                           )
v.                                         )
                                           )        C.A. No.  **B - 0 4 - 0 1 9**
MARC MOORE, FIELD OPERATIONS DIRECTOR,     )
IMMIGRATION AND CUSTOMS                     )
ENFORCEMENT, DRO for SAN ANTONIO AREA      )
of OPERATIONS, and JOHN ASHCROFT,          )
UNITED STATES ATTORNEY GENERAL,            )
Respondents.                               )
_____)

**PETITION FOR WRIT OF HABEAS CORPUS**
**AND BRIEF IN SUPPORT THEREOF**

Juana García Ríos files the instant Petition for Writ of Habeas Corpus and Injunctive and Declaratory judgments. Petitioner seeks relief from a final order of removal, entered on January 12, 2004. The plaintiff seeks various forms of declaratory and corresponding injunctive relief, as more fully discussed below.

**I. JURISDICTION**

1.      Petitioner asserts habeas jurisdiction under Title 28, United States Code, ("28 U.S.C."), §2241, to review the order of removal entered against her on February 12, 2003. The petitioner is not presently detained in the custody of the Department of Homeland Security. Respondent Moore has administrative control over petitioner's case. Respondent Moore may execute the order of removal at any time. Respondents Moore and Ashcroft therefore are the appropriate custodians of petitioner for habeas purposes.

## II. THE PARTIES

2.       The petitioner is a native and citizen of Mexico who became a Lawful Permanent Resident, ("LPR"), of the United States on July 3, 1989. She has resided continuously in the United States since that date. She is the subject of an administratively final order of removal entered on January 12, 2004.

3.       Respondent Moore is the Interim Field Operations Director of the San Antonio, Texas, office of Immigration and Customs Enforcement, ("I.C.E."). Respondent Ashcroft is the United States Attorney General.

## III. FACTS

4.       The petitioner is a 34 year-old native and citizen of Mexico who has resided in the United States since July 3, 1989. Ms. García's mother, Esperanza García, is a LPR. Ms. García has one United States citizen, ("USC") child. Ms. García has five siblings who also reside in the United States. Four of Mr. García's siblings are LPR's, and one is a USC. Ms. García has been steadily employed in the food service industry for her entire adult life, and owns her own home in Brownsville, Texas.

5.       In Kleberg County, Texas, on February 27, 1997, Ms. García pled guilty to possession of marijuana. Adjudication was deferred pursuant to Article 42.03 § 5 of the Texas Code of Criminal Procedure, ("TCCP"), and Ms. García was placed on Community Supervision for three years.

2

**Removal proceeding before the United States Immigration Judge**

6.  Removal proceedings began upon issuance of an Order to Show Cause, ("OSC"), by the Immigration and Naturalization Service, ("INS"), on February 27, 1997.[1] The INS therein alleged that the respondent is a native and citizen of Mexico and an LPR of the United States who is removable pursuant to (former) 8 U.S.C. §1251(a)(2)(B)(i) in that she has been convicted of an offense relating to a controlled substance. The petitioner moved to terminate proceedings, arguing a deferred adjudication is not a conviction under state law, and therefore she is not removable based upon her plea of guilty. In support of her position, she reasoned that one who has not been previously afforded any rehabilitative treatment and whose adjudication has been deferred falls within 18 U.S.C. §3607, the Federal First Offender Act, ("FFOA"). Federal law does not consider a finding of guilt for a first offense of simple possession of a controlled substance to constitute a conviction. The petitioner further emphasized whether or not the finding of guilt by a state court judge is withheld and subsequently set aside, 18 USC §3607 remains unchanged. Therefore, the petitioner submitted, she has not suffered a conviction. The effect of 18 USC §3607 is not nullified by 8 U.S.C. §1101(a)(48)(A). Congress still intends to view a first offense of simple possession of a controlled substance for which a defendant has pleaded or been found guilty and adjudication or entry of judgment deferred as not having been convicted "for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, *or for any other purpose.*" 18 USC

---

[1] The INS merged into the newly organized Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, effective March 1st 2003.

§3607(b), (emphasis added). *See also Matter of Manrique,* 21 I&N Dec. 58, (Board of Immigration Appeals 1995).

## Decision of the United States Immigration Judge

7.    At an individual hearing on November 12, 1997, the Immigration Judge, ("IJ"), granted the petitioner's motion to terminate proceedings. The INS timely filed it's notice of appeal with the Board of Immigration Appeals, ("BIA").

8.    On June 21, 2002, the BIA sustained the INS appeal and remanded the matter to the IJ for the purposes of ascertaining whether the petitioner is eligible for any form of relief from removal. The BIA decision relied on *Matter of Roldan,* 22 I& N Dec. 512, (BIA 1999) and *Matter of Salazar,* 23 I&N Dec. 223, (BIA 2002).

9.    The petitioner appeared at an individual hearing in remanded proceedings before the IJ on February 4, 2003, and requested relief from removal pursuant to 8 U.S.C. §1182(c). The petitioner urged the IJ that she fell within the scope of LPR's described in *INS v St Cyr,* 121 S. Ct. 2271, (2001) despite the date of her guilty plea. Further, the petitioner reminded the IJ of the memorandum issued by the Office of the Chief Immigration Judge, ("OCIJ"), on December 7, 1999, concerning any LPR who would have been eligible for relief pursuant to 8 U.S.C. §1182(c) but for provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and would have been otherwise eligible for Cancellation of Removal for Certain Permanent Residents pursuant to 8 U.S.C. §1229b(a), but for having been placed in deportation proceedings rather than removal proceedings. The OCIJ declared that an LPR who had a pending case before the Immigration Court as of December 7, 1999, may be placed in removal proceedings and apply for relief pursuant to 8 U.S.C. §1229b(a). However, due to the date of petitioner's

4

guilty plea, the effective date of the AEDPA, and the date she was placed in proceedings,

neither 8 U.S.C. §1182(c) nor 8 U.S.C. §1229b(a) relief were available.

10.        The IJ found the petitioner had suffered a conviction for an aggravated

felony which rendered her ineligible for relief pursuant to 8 U.S.C. § 1182(c), stating:

> Since respondent is deportable under §241(a)(2)(B)(i) of the Act, (8 U.S.C.
> §1251(a)(2)(B)(i), at the time of her plea of guilty on February 27th, 1997, she was
> not eligible to apply for a waiver under §212(c) of the Act by reason of amendment
> to 212(c), made by §440(d) of the AEDPA. Therefore, since respondent was not
> eligible for §212(c) relief at the time of her plea to the criminal offense then under
> the law then in effect relating to §212(c), she does not remain eligible to apply for
> §212(c) relief pursuant to *I.N.S. v. St. Cyr*, 121 S. Ct. 2271 (2001).

Oral Decision of the I.J., February 12, 2003 at 3.

## Appeal to the Board of Immigration Appeals

11.        Petitioner's appeal to the Board of Immigration Appeals, ("BIA"), challenged the

IJ's finding that the petitioner is not an intended beneficiary of the Supreme Court's

ruling in *I.N.S. v. St. Cyr*, supra. Ms. García explained that she was only excluded from 8

U.S.C. §1182(c) relief *after* she was found not to be deportable. Proceedings were

terminated. In remanded proceedings, a guilty plea which was not an aggravated felony

on the date of it's commission, and for which Ms. García could have sought a waiver

under 8 U.S.C. §1229b(a) had she been found removable, instead became a conviction

for an aggravated felony for which no relief is available. Ms. García is not outside the

class of persons who should be permitted to apply for a discretionary waiver. She is

instead an example of a person who should have been afforded the prospect of seeking

relief, had such relief been necessary. She should not be prohibited from seeking relief

now, especially because others who are identically situated, but whose hearings took

place before or after Ms. García's may continue to reside as LPR's after submitting an

application for relief pursuant to 8 U.S.C. §§1182(c) or 1229b(a). Such an arbitrary

outcome in the case of a long time resident is fundamentally unfair.

12.      On January 12, 2004, the BIA dismissed Ms. García's appeal, stating that the

decision of the IJ was correct. The order also mentioned that the BIA is without authority

to rule on the substance of Ms. García's constitutionally based arguments. "On appeal,

the respondent contends that her removal would be unconstitutional or that the laws

under which she has been found removable are unconstitutional. The Board is not

empowered, however, to rule on the constitutionality of the statutes and regulations we

administer." Board's decision and order, January 12, 2004, (internal citations omitted).


## IV. CAUSES OF ACTION IN HABEAS CORPUS

### a.      VIOLATION OF DUE PROCESS

13.      This Court has jurisdiction under 28 U.S.C. §2241 to review orders of removal,

even though the petitioner did file a petition for review at the Fifth Circuit. In *McCarthy*

*v. Madigan*, 503 U.S. 140 (Supreme Court 1992), the United States Supreme Court

commented upon the requirement that parties exhaust prescribed administrative remedies

before seeking relief from the federal courts. 503 U.S. 140, 144-45. "Exhaustion is

required because it serves the twin purposes of protecting administrative agency authority

and promoting judicial efficiency." The exhaustion principle acknowledges that the

administrative agency charged by Congress retains primary responsibility for the

adjudication of those programs. "Exhaustion concerns apply with particular force when

the action under review involves exercise of the agency's discretionary power or when the

agency proceedings in question allow the agency to apply its special expertise." 503 U.S.

140, 145.

14.        It is established law in the Fifth Circuit that the "jurisdiction stripping provisions," found at 8 U.S.C. §1252(a)(2), preclude a petition for review of a final order of removal arising from a criminal offense covered by 8 U.S.C. §1227(a)(2)(B)(i). While the Fifth Circuit has jurisdiction to determine its' own jurisdiction, once the court determines that the order of removal is based on a controlled substance offense,( 8 U.S.C. §1227(a)(2)(B)(i), "the jurisdiction stripping provisions of §1252 clearly apply." *Flores Garza v. INS,* 328 F.3d 797, (5th Cir. 2003). Because the order of removal in this matter was based on the identical provision of law, the Fifth Circuit would have dismissed any petition for review due to lack of jurisdiction. Therefore, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first filing a petition for review at the Fifth Circuit.

15.        The removal order against petitioner violates principles of equal protection. In *Salazar Regino, supra,* the BIA found that a non-citizen who has been granted deferred adjudication for simple possession of a controlled substance and whose case arises within the 5th Circuit has been convicted of an aggravated felony and is ineligible for relief from removal. In the 2nd, 3rd, 4th, 6th, and 7th circuits, a similarly situated non-citizen may be eligible for discretionary relief. *In re Yañez García,* ." 23 I&N Dec. 390, (BIA 2002). While an identically situated non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States. It violates principles of equal protection, and therefore due process, where the BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino, supra,*

that in the Fifth Circuit a single offense for simple possession of a controlled substance, is

a drug trafficking crime for which there is no relief from removal.

## V. SECOND CAUSE OF ACTION-

## INJUNCTIVE AND DECLARATORY JUDGMENT

17.          Executing a removal order can have serious, and in some cases, permanent

consequences. Even where the person was not deportable as charged, and deportation

results in a miscarriage of justice, it can make it difficult, if not impossible, to set aside

the deportation order. *See Lara v. Trominski,* 216 F.3d 487, 494, n.8 (5th Cir. 2000) (Must

show that there is a freestanding due process right to be free of 'gross miscarriage of

justice' during the immigration process.").

**The retroactive characterization of petitioner's offense as a conviction for an
aggravated felony violates Due Process as declared in a series of Supreme Court
involving "fair notice."**
18.          Although not punishment for a criminal offense, deportation has long been

recognized as a "penalty." *See Reno v. American-Arab Anti-Discrimination Committee,*

525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result.

Deportation would then become an additional penalty, retroactively attached to the

"criminal offense." This, it is submitted, would be a "manifest injustice," and would

violate Due Process. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 716

(1974) (retroactive application of a law violates Due Process if it creates a "manifest

injustice), and *B.M.W. of North America v. Gore,* 517 U.S. 559, 574 (1996).

("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence

dictate that a person receive fair notice not only of the conduct that will subject him to

punishment but also of the severity of the penalty…").

**The language of the United States Supreme Court in *INS v. St. Cyr, supra*, emphasizes that the legal consequences of any action should be evaluated under the law as it existed on the date of it's commission.**

19.    The BIA should have viewed the petitioner's guilty plea under the law as it existed when it occurred. Even though Congress was specific as to the retroactive effect of 8 U.S.C. §§1101(a)(48) and 1227(a)(3)(A)(iii), the second prong of the retroactivity analysis employed in *INS v. St. Cyr, supra*, asks whether applying those definitions produces an impermissible retroactive effect for aliens who, like petitioner, entered a plea at a time when the plea would not have rendered them removable.

20.    Applications of 8 U.S. C. §§1101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any possibility of relief for people who entered into plea agreements with the expectation that they would be eligible for such relief, if relief ever became necessary, clearly creates liability for events that have already run their course. In this case, the petitioner would not have even needed any relief because she would not have been considered convicted under the state of the law on February 27, 1997, the date she entered her plea. The IJ terminated proceedings after specifically finding that she had not suffered a conviction. As an LPR, she would neither be deportable or removable.

**The petitioner's equal protection and fair notice arguments should be viewed in light of the Supreme Court doctrine of Substantive Due Process.**

21.    The Due Process Clause of the Fifth Amendment prohibits the interference or impairment of a fundamental right unless the law accomplishes a compelling state interest. Further, the relation between the objective of the law and the method employed to accomplish the state's aim must be necessary, and narrowly tailored to meet that end.

9

If the government may achieve its' goal in a less burdensome way, then a law restricting a fundamental right violates Due Process. *See Moore v. East Cleveland* 431 U.S. 494 (1977).

22.    Choices and decisions concerning marriage, procreation, and raising ones' family implicate fundamental rights. The United States Supreme Court has applied strict scrutiny to laws impinging upon fundamental rights. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

23.    The law must be drafted to ensure that the government can achieve its' goal in the way that is the least exacting and troublesome to those whose fundamental rights are being restricted by its' enforcement. In *Pierce v. Society of Sisters, supra,* the Supreme Court voided a statute which it held:

[U]nreasonably interferes with the liberty of parents and guardians to direct the

upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.

268 U.S. 510, 534-535

tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." 431 U.S. 494, 504. They are not specifically enumerated in the Bill of Rights, yet respect for the liberty of the individual and the sanctity of the family are among the traditional values upon which our nation was founded and thrived. They are recognized by the Supreme Court within the doctrine of Substantive Due Process.

> Due process has not been reduced to any formula; its content cannot be determined by reference to any code. The best that can be said is that through the course of this Court's decisions it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society. If the supplying of content to this Constitutional concept has of necessity been a rational process, it certainly has not been one where judges have felt free to roam where unguided speculation might take them. The balance of which I speak is the balance struck by this country, having regard to what history teaches are the traditions from which it developed as well as the traditions from which it broke. That tradition is a living thing. A decision of this Court which radically departs from it could not long survive, while a decision which builds on what has survived is likely to be sound. No formula could serve as a substitute, in this area, for judgment and restraint.
> ". . . [T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This `liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, . . . and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.

431 U.S. 494, 501-02, (internal citations omitted).

25.     The petitioner urges this Court that the cumulative effect of counting a deferred adjudication as a conviction, and then finding that possession of marijuana is a drug trafficking crime, violates her right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. While the United States

11

Congress has plenary power over immigrants, laws which impair a fundamental right, such as the right to raise one's family and cohabit with one's nuclear family, must be accomplished by means narrowly tailored to meet that end. Immigration laws provide that a former LPR who is deported from the United States after having been convicted of an aggravated felony is subject to lifetime banishment from the United States. *See 8 U.S.C. §1182(h)(2).* The purpose of immigration laws are to provide mechanisms by which non-citizens can adapt and flourish in the United States, while protecting the population from any dangerous elements among all the new arrivals. The INA as currently construed by the BIA provides no opportunity for a hearing or consideration of substantial equities. The means employed are not the least exacting and troublesome to those thereby affected. Because the goal of minimizing criminal activities by immigrants may be accomplished in a manner less disruptive to LPR's who have United States citizen family members, counting a deferred adjudication as a conviction, and then finding that simple possession of a controlled substance is a drug trafficking crime, violates substantive due process.

26.    Although its' opinion upheld the right of extended families to cohabit, and struck down a zoning law which impaired that right, the United States Supreme Court could have been discussing immigrant families when it stated:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. 14 Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it. Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored

12

throughout our history, that supports a larger conception of the family. Out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home. Decisions concerning child rearing, which Yoder, Meyer, Pierce and other cases have recognized as entitled to constitutional protection, long have been shared with grandparents or other relatives who occupy the same household - indeed who may take on major responsibility for the rearing of the children.

431 U.S. 494, 504-05.

27.    In a recent decision the United States Supreme Court held 8 U.S.C. §1226(c) compelling mandatory detention for LPR's convicted of an aggravated felony pending removal proceedings constitutional, and noted:

It has been settled for over a century that all aliens within our territory are "persons" entitled to the protection of the Due Process Clause. Aliens "residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility." *Fong Yue Ting* v. *United States, 149 U.S. 698, 724,* (1893). *The Japanese Immigrant Case, 189 U.S. 86, 100-101,* (1903), settled any lingering doubt that the Fifth Amendment's Due Process Clause gives aliens a right to challenge mistreatment of their person or property.

*Demore v. Kim*, No. 01-1491, (U.S. Sup. Ct. April 29, 2003) at 15.

28.    While *Demore v. Kim* found that an LPR may be detained without an individualized bond hearing before an IJ, it also re-emphasized that LPR's should be afforded constitutional protection. Due to the decision of the Fifth Circuit's decision in *United States v. Hernández Avalos,* 251 F.3d 505, 506, (5th Cir. 2001), and the BIA's disinclination to distinguish a finding of aggravated felony for purposes of interpreting the United States Sentencing Guidelines from its' application in removal proceedings, the application of the BIA's ruling in *Salazar Regino*, as applied to Mr. Aviña, violates long

13

standing tenets of equal protection and due process. The Supreme Court noted, in

*Demore v. Kim,*

> once an alien lawfully enters and resides in this country he becomes invested with
> the rights guaranteed by the Constitution to all people within our borders. Such
> rights include those protected by the First and the Fifth Amendments and by the
> due process clause of the Fourteenth Amendment. None of these provisions
> acknowledges any distinction between citizens and resident aliens. They extend
> their inalienable privileges to all "persons" and guard against any encroachment on
> those rights by federal or state authority.' " 344 U.S. at 596-597, n. 5 (quoting
> *Bridges, supra,* at 161). See also *United States* v. *Verdugo-Urquidez,* 494 U.S. 259,
> 271, (1990) ("[A]liens receive constitutional protections when they have come
> within the territory of the United States and developed substantial connections with
> this country");

*Demore v. Kim* at 16.

29.    Ms. García became a LPR in 1989. She had accumulated more than seven years

of lawful permanent residence prior to the commission of the offense for which

adjudication was deferred in 1997. Had Ms. García been heard on the merits of his

application for relief prior to the BIA's ruling in *Salazar Regino, supra,* her long U.S.

residence, her immediate and extended family, her solid employment history, and any

evidence of rehabilitation would be factors for consideration in an application for

discretionary relief pursuant to 8 U.S.C. §1229b(a). *See: In re C-V-T-* 22 I & N Dec. 7,

(BIA 1998).

30.    The effect of the BIA's rulings in *Salazar Regino, supra* places relief available

under federal law in other jurisdictions beyond the reach of Ms. García, resulting in

fundamental unfairness. When the United States Supreme Court disagreed with the

Attorney General's interpretation of the retroactive provisions of the AEDPA and

IIRAIRA in *INS v. St Cyr, supra,* the Court applied the doctrine of fundamental fairness

to allow LPR's who pled guilty in reliance on the availability of a waiver to ameliorate

the immigration consequences of those convictions and apply for 212(c) relief. Here, fundamental fairness and revered notions of substantive due process, very recently re-emphasized by the United States Supreme Court in *Demore v. Kim, supra,* require that 18 USC §3607, and all other protections available under federal law to long time LPR's, be equally accessible to Ms. García.

31.   The BIA's reluctance to follow the precepts of *Roldan Santoyo and Lujan Armendariz v. INS,* 222 F.3d 728, (9th Cir. 2000), finding a deferred adjudication is not a conviction for purposes of federal law due to 18 USC §3607, and then follow the ruling of the Fifth Circuit in *United States v. Hernández Avalos, supra,* spawns another constitutional dilemma. The denial of equal protection is compounded by the denial of substantive due process. The BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino, supra,* that in the Fifth Circuit a single offense for simple possession of a controlled substance, is a drug trafficking crime for which there is no relief from removal. There is a penetrating disparity in results created by this combination of effects. While an identically situated non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States. Yet due to the BIA's ruling in *Salazar Regino, supra,* an LPR in the jurisdiction of the Fifth Circuit with over two decades of lawful residence and similar or even more weighty equities, is not even permitted to seek relief.  Had Ms. García not resided lawfully resided in the United States for so many years, her claim to a denial of substantive due process would admittedly be lessened. If Ms. García was permitted to apply for relief and her application was denied as a matter of discretion after

15

consideration upon all the merits she may present, her claim to a denial of substantive due process would evaporate.

32.     However, in light of the apparent disparity in outcomes which gives rise to her valid claim to a denial of equal protection, because Ms. García has lived in the United States for many years and everything she knows and loves is in this country, to deny her a hearing before an IJ is contrary to the notions of substantive due process explicated in *Moore v. East Cleveland, supra* and *Demore v. Kim, supra.*

33.     While the goal of deterring drug abuse by non-citizens is a legitimate governmental function, denying an administrative immigration hearing to an identified drug abuser is not the least restrictive means of accomplishing those ends. Because the denial of an opportunity to seek relief may result in lifetime banishment from the United States, in effect, the application of the BIA's decision in *Salazar Regino, supra,* thereby results in enormous hardship to citizens of the United States who are family members of those effected LPR's. Cherished judicial doctrine promulgated by the United States Supreme Court must overrule an administrative agency's interpretation of dicta in the Fifth Circuit's decision, because the agency's ruling engenders a violation of equal protection. That denial of equal protection, especially when considered in light of Ms. García's lengthy residence and extraordinary ties to the United States, amounts to a denial of substantive due process.

34.     Here, the IJ found that Ms. García is ineligible for relief pursuant to 8 U.S.C. §1182(c) due to changes in the law subsequent to the date she entered a guilty plea.  On February 27, 1997, a deferred adjudication for possession of marijuana did not even render her deportable. Upon initiation of deportation proceedings, the IJ found that

deferred adjudication was not a conviction within the meaning of 8 U.S.C. §1101(a)(48), and no relief would have been required. Due to the effect of the AEDPA and subsequent decisions of the BIA in *Roldan, supra,* and *Salazar Regino, supra,* Ms. Garcia is not only removable, she is without relief and any beyond any possibility and all hope of ever residing in the United States in any lawful status.

35.     Therefore, considerations of fair notice, reasonable reliance, and settled expectations mandate that relief pursuant to 8 U.S.C. §1182(c) should not be eliminated for LPR's who would not have been rendered deportable on the date a plea of guilty was entered, and despite the BIA's decision in *Salazar Regino, supra.*

36.     A functional, commonsense judgment is required in order to ascertain whether a statute creates an impermissible retroactive effect. *Martin v. Haddiz,* 527 U.S. 343 (1999). Retroactive application of the rulings of the BIA in *Roldan, supra,* and *Salazar Regino, supra,* as applied to Mr. García, increases her liability for past conduct and erases any settled expectations she may have had concerning her immigration status on the date she entered a plea of guilty. The fundamental fairness analysis upon which *St. Cyr* is based is applicable to Ms. García, because reliance on the immigration laws was part of the calculus in deciding whether or not to enter a plea.

WHEREFORE, it is urged that the Court grant the following relief:

1.     That the Writ of Habeas Corpus issue, and

2.     The removal order be vacated, and the petitioner's case be remanded to the BIA for further proceedings consistent with the principles articulated herein;

17

3.      That respondents Winfrey and Ashcroft be enjoined from executing the order of

removal or changing Ms. García's custody status; and

4.      That the Court award such other and further relief as the Court deems just and

appropriate under all of the circumstances.

Respectfully submitted,


_____
Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835


## VERIFICATION

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.


_____
Jodilyn M. Goodwin, Esq.

### Certificate of Conference

I, Jodilyn M. Goodwin, certify that on February 6th, 2004, I attempted to conference with SAUSA Nancy Masso but was unable to speak with her. A voice mail was left for her advising her of the filing of this writ on this day.


_____
Jodilyn M. Goodwin, Esq.


## CERTFICATE OF SERVICE

18

I, Jodilyn M. Goodwin, certify that today, February ___ 2004, a copy of the petition for writ of habeas corpus, was served upon SAUSA Nancy Masso, by hand delivery to 600 East Harrison, Brownsville, Texas, 78520.

Jodilyn M. Goodwin, Esq.

19